(No. 4843—)

ALBERTA HANSEN, Administrator of the Estate of Edward A. Boegen, deceased, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed March 24, 1961.*

DIXON, DEVINE AND RAY, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General, for Respondent.

WHAM, J.

This is an action commenced and maintained by claimant, Edward Boegen, until his death, which resulted after the evidence was heard by the Commissioner from causes other than those upon which this action is predicated. It was continued thereafter by the administrator of his estate against respondent, State of Illinois, to recover $25,000.00 in damages for personal injuries, which Edward Boegen sustained on May 24, 1958, when he fell from a nature path or trail into a canyon on White Pines Forest State Park near Dixon, Illinois, while supervising several boy scouts in his troop on a hike through the park.

The complaint charged that claimant stepped on a portion of the path or trail adjoining a gorge, and a crumbling of dirt on the outer edge of the path, or a slippery condition, or both, caused him to slip and fall into the gorge, a distance of 100 feet. The complaint further charged that the State of Illinois had allowed a hazardous and dangerous condition to exist, and was guilty of negligence in one or more of the following respects:

(a) Failed to provide notice or warning of the hazardous condition of the trail.

(b) Failed to provide notice or warning of the proximity of the dangerous gorge to the portion of the trail in question.

(c) Failed to keep the trees, foliage and under-brush surrounding the trail in question cleared sufficiently, so that travelers thereon might observe the proximity of the dangerous gorge to said trail.

(d) Failed to provide guard rails, platforms, widened trail, or any other means for hand-grips or protection for travelers on the trail at the said point of proximity to said dangerous gorge.

(e) Kept and maintained said trail in a dangerous, hazardous and unsafe condition, although it knew, or, in the exercise of reasonable care, would have known thereof for a long time prior to said injury to claimant.

(f) Maintained said trail in a slippery and otherwise dangerous and defective condition at the point in proximity to said gorge, although it knew, or, in the exercise of reasonable care, would have known thereof for a long time prior to said injury to claimant.

(g) Otherwise failed to exercise reasonable care in establishing and maintaining the path or trail over which claimant was traveling at the time aforesaid.

The facts concerning the happening of the accident, as shown by the evidence, are as follows:

On May 23, 1958, Edward Boegen, Scout Master, 29 years of age, and his troop of six boy scouts attended a camp-out with three other troops at White Pines State Park, near Oregon, Illinois, paying a fee to enter the park. Boegen had been there ten years before, but was not familiar with its trails.

The next morning Boegen took his troop on a nature study hike. They used a map on which the buildings, creek, shelters and trails were shown. The map was

used in selecting their route, including the trail on which Boegen was injured.

They started from the lodge on a wide main trail, turned off on a foot path, which was shown in claimant's exhibit No. 1, then onto a secondary trail on which Boegen was injured. Main trails differ from secondary trails only in that they are at least partially man made, wider, and maintained to keep weeds low. Secondary trails are formed by constant usage of hikers. There were no designations on the map furnished claimant, or signs in the park to distinguish the trail as main or secondary.

There were no signs showing directions to follow, or indicating one trail from another, or warning of any dangers. A sign with the legend "Danger—Loose Rock" was 25 yards away from the place where Boegen and his troop entered the trail upon which he was injured. They did not pass it, and did not see it. This was the only sign in the vicinity pertaining to the trail.

The trail's dirt surface was one and a half to two feet wide, and was well worn, so that the underbrush did not close in on it. On both sides, however, was a heavy foilage, which did not grow on the path itself. It was wet or damp in places in the area where Boegen fell, but there was no standing water. To the left of the trail the ground sloped steeply up. Pine Creek paralleled the trail on the right. They walked in single file with Mark Omoto, one of the scouts leading, and David Madsen, the last of the scouts. Boegen was 20 feet behind Madsen and about 40 feet from Omoto. Claimant's exhibits Nos. 2 and 4, photographs of the trail showing where Boegen fell, were offered and admitted into evidence. At the point where he fell, the land had been washed back by natural drainage causing the cliff edge to cut back sharply from Pine Creek into the edge of the trail and out into

a narrow deep gorge, which is shown in claimant's exhibit No. 3. There were no guard rails or protective devices in that area, nor were there any warning signs.

The Park Custodian, Earl Kappenman, testified that this gorge could not be seen from the trail until a person was within six feet of it, and then only if a person was looking for it.

As the scouts entered this area, they did not see this gorge, nor did they see any indication of danger, as they approached it. Omoto led the scouts around a tree to the left of the trail, and then back onto the trail, because the path was wet at that point. After returning to the trail, he bent over to tie his shoe lace, and for the first time saw the gorge. He then told Reh, the second scout, to look, and the rest clustered around him for a few seconds and went on. Madsen testified that, as he reached the tree, he turned, and saw for the first time the gorge where prior thereto he had thought there was only a little shelf of land. He gave as his reason for going around the tree the fact that he was afraid he might slip and fall off onto what he thought was a shelf of land a few feet from the trail. It was only after passing around the tree that he saw what the other scouts had seen, namely, the deep gorge immediately adjacent to the edge of the trail.

Claimant did not hear any of the scouts discussing this gorge, nor did he see them clustered on the trail. He saw Omoto lead the troop around the tree, and considered at the time that this was poor hiking practice, because they might slip on the incline and fall. He looked around to the left and right and ahead without stopping, and saw no apparent reason why they should go around the tree. He surmised that they were playing follow the leader, and, as he walked on, was thinking of what to tell the boys, because he did not want them to do the same

thing on their return trip. He testified that he saw no gorge or change in the lay of the land or foliage, and the first thing he knew he was flat on his back. He states that he did not slip on the damp path, but thought that solid ground gave way and collapsed beneath him. He slid along on his back until he hit something and passed out. He landed at a point 46 feet below the trail.

Madsen testified that he heard a sound, turned, and saw claimant going off into space past the cliff. The scouts went down into the bottom of the gorge after him, as did a troop of girl scouts, who had been hiking in an opposite direction on the same trail. He received very serious injuries to his person, and was removed to the Dixon Hospital, and then to the Illinois Research Hospital at Chicago where he remained up to and including the date of the hearing. He thereafter died in the Oak Forest Institution on October 15, 1959.

Respondent contends that the cases of *Kamin* vs. *State of Illinois,* 21 C.C.R. 467, and *Stedman* vs. *State of Illinois,* 22 C.C.R. 446, control, and there can be no recovery, since there was no duty to maintain a guard rail at that point, and that the evidence fails to establish a knowledge or constructive notice of an unsafe condition. Further, that the failing to place guard rails at the edge of the canyon was not the proximate cause of claimant's injury, but a mere condition, which rendered possible the happening of the accident.

We have carefully considered the record in this case and the authorities cited by respondent. With respect to the Kamin case, we believe it is not completely in point. In the Kamin case the canyon into which claimant fell was apparent to her and clearly visible. In the instant case the evidence establishes that it was not visible to claimant. Not only does the evidence of claimant establish the fact that it was not visible, but also he is supported by

the scouts, Omoto and Madsen, and claimant's witness, Kappenman himself. Moreover, the photographs, which are before the Court, fail to reveal a canyon due to the dense foliage adjoining the trail.

In our view of the case, it is immaterial whether claimant slipped while he was walking on the path, or a portion of the path crumbled from under him. Claimant's allegation in the complaint, which we consider material under the proof, is the charge that the State negligently failed to provide notice or warning of the proximity of the dangerous gorge to the portion of the trail in question.

We do not consider that the trail itself was in a hazardous condition, nor do we consider that the State was under any duty to keep the trees, foliage, etc., surrounding the trail in question cleared to provide a view, nor do we feel that the State was required to provide guard rails at this particular place. Claimant's case must stand or fall on the allegations set forth above, and, therefore, the Kamin case does not pertain to this situation.

We have also considered the Stedman case on which respondent relies, but it likewise fails to control this situation. In the Stedman case claimant intentionally walked off of the pathway in the night time when he knew that he was in the proximity of a precipice. In this case, however, claimant was walking where he had a right to walk, and did not step off the path. Rather, he fell, and then went off the path down into the canyon.

The question before this Court is whether or not respondent owed a duty at this particular place in the park to warn of the proximity of the canyon.

Obviously, the State, in maintaining a nature park, is not obligated to warn of every dangerous place within it. It is, however, obligated to warn of a danger that

exists along a trail, which it knows is being used by the public, who would have no knowledge of the existing danger.

The evidence clearly shows that respondent knew that this particular trail was used by boy scouts, girl scouts and other members of the public. Although it did not create the path in the first instance, it did assume some control over it after it had been created through years of usage by the public with its consent. The testimony establishes that it had even erected a sign at one point warning of loose rock along this same path, and the testimony of Mr. Earl Kappenman, Park Custodian, indicates that it was inspected from time to time.

It, therefore, evolves upon us to determine whether or not the evidence has established such a dangerous situation, as would call for a warning by the State.

Here was an unusual condition. All along the trail, up to the particular point involved, the path was a safe distance from the edge of the canyon. It was estimated by the witnesses to be as much as a block from the trail. Users on this path were, therefore, lulled into a sense of complacency by the distance separating the edge of the path from the place of danger up to the point where suddenly a cavern immediately adjoined the one and a half to two foot pathway bordered on the opposite side by an upward slope. This created a condition where the slightest misstep would result in a certain fall to the bottom of the canyon and resulting serious injury.

This was not one of the inherent risks to hiking assumed by the hiker, since it constituted a risk unknown to him. Only those risks that are known and realized by the person coming upon the land in the exercise of due care can be classified as those which such a person would be held to assume under the law.

We believe from the evidence that respondent was negligent in failing to provide notice or warning of the proximity of the dangerous gorge to the portion of the trail in question. This is not to say, however, that respondent must warn of every dangerous condition in a park. In many instances it would place an unreasonable burden on the State to require it to warn or protect against injury. In other instances, even though a dangerous condition exists, the State should not be placed under a duty to either warn or guard against an injury, where such danger is as obvious to the person using that portion of the park as to respondent. Then, too, cases may arise wherein paths have been created by hikers, and have not been recognized as such by respondent.

The next question to resolve is whether or not claimant was in the exercise of reasonable care for his own safety. We have carefully reviewed the testimony on this point, and find that there is no evidence indicating that he was doing anything other than what an ordinary person would do under the same or similar circumstances. It cannot be said that he was guilty of contributory negligence in not seeing the gorge at the point where he fell, since all of the testimony in the case establishes that the others ahead of him did not see it until they were right on it, and particularly in view of the fact that respondent's own witness testified that it could only be seen when within six feet of it. Moreover, as hereinabove stated, the pictures introduced into evidence disclose a situation that would not be apparent to a person in the exercise of ordinary care until the last moment. Nor can it be said that the mere falling on the trail, whether by slipping, or by a portion of the trail giving way, could be chargeable as contributory negligence.

We believe that claimant has borne the burden of proof, and that an award should be made in this case.

With respect to the amount of damages, the rule is well settled that a cause of action for personal injuries survives to the personal representative of a deceased, where the death of the injured was not caused by the injuries received by the decedent.

In such action recovery is limited to the loss of earnings, medical expense, disability, and pain and suffering incurred and sustained from the date of the accident to the time of death.

Alberta Hansen, Administrator of the Estate of the original claimant, Edward Boegen, deceased, was substituted as party claimant after the suggestion of death had been filed.

In her affidavit filed in support of her petition, claimant administrator stated that:

"The said claimant, Edward A. Boegen, died on or about October 15, 1959 from causes other than the injuries, which were the basis of the complaint filed in this cause; and that attached hereto as exhibits A and B are copies of letters, which were received by the affiant and her attorneys, which show the result of an autopsy of the said Edward A. Boegen, claimant."

The pertinent portions of exhibits A and B, attached to said petition, read as follows:

### EXHIBIT A

"The microscopic study of the organs have been finished, and the findings are summarized as follows:

1. Mr. Edward Boegen suffered of idiopathic epilepsy, i.e., no lesion could be found to explain the epilepsy. The microscopic changes found in the brain were just secondary to the repeated convulsions, but they were not the cause of the epilepsy. These findings are, therefore, in accordance with our present knowledge about the so-called idiopathic epilepsy.

2. The paralysis of the lower extremities found its explanation in the extensive damage of the spinal cord (demyelinization), which in turn was secondary to the injury suffered by the patient.

The patient had a severe liver disease, so-called post-nectotic cirrhosis, which has developed secondary to hepatitis of viral etiology.

Respectfully yours,
(Signed) Paul B. Szanto, M.D.
B. Martinez, M.D.
Pathologists"

## EXHIBIT B

### "OAK FOREST INSTITUTIONS
Oak Forest, Illinois
February 3, 1960

Mr. George K. Ray
Attorney at Law
121 East First Street
Dixon, Illinois

My dear Mr. Ray:

I am attaching herewith a copy of the autopsy report in the case of Edward Boegen, who died in this hospital on October 15, 1959. The cause of his death was bronchopneumonia with a background of idiopathic epilepsy. Although this patient gave a history of severe injuries to the spine and to the thoracic cage following an accident during May, 1958, with resulting paraplegia, it is our opinion that this did not directly contribute to the cause of the death of the patient.

Our confirmed and substantiated diagnosis during the period of his hospitalization were: Spinal cord lesion due to accident, 1958, paraplegia due to cord injury and associated with incontinence of urine and bowel, multiple decubiti, idiopathic epilepsy, bronchopneumonia.

I am also attaching herewith a copy of a letter written to Mrs. A. Hansen, 3023 N. Oakley Avenue, Chicago 18, Illinois, sent to her at the request of Dr. F. H. Ketola of 1791 W. Howard Street, Chicago, Illinois, by our pathologist, which gives additional microscopic findings resulting from the post mortem examination.

It is recommended that should you desire additional information, our entire chart on this case is available to you.

Respectfully yours,
Eugene J. Chescrow, M.D.
Medical Superintendent"

No further testimony was adduced by either party, and respondent has filed no motion nor objections to the claimant administrator proceeding with this cause as a survival of the personal injury action commenced by Edward Boegen, deceased.

The date of death appearing from the petition of the claimant administrator is October 15, 1959. The injury occurred on May 24, 1958.

The evidence established that Boegen had been in good health, was permanently employed at an average of $78.00 per week, and living with his widowed mother. His medical expenses to the date of the hearing held on March 10, 1959 totaled $1,787.30. The evidence established that he would require extensive medical attention and care the rest of his life, although at the time of the hearing Dr. Eric Oldberg, Director of the Division of Neurology and Neurological Surgery at the Illinois Research Hospital, testified that Boegen was at the time of the hearing receiving all hospital, professional and medical services without charge, except those noted above.

Dr. Eric Oldberg further testified that, ''this patient had a transverse complete lesion of the spinal cord at the fifth dorsal segment, which means that he had no voluntary muscle power below a portion of his body just below the line adjoining the nipples; that he had no sensation below that level, and that he had no bowel or bladder control. In addition to this, the patient had some fractured ribs on the left side, and he had a head injury, which was operated upon in order to rule out the possibility of there being a blood clot, which could be drained. In addition to this, he had an operation on his bladder, so that urinary infection could be better controlled. He also had plastic surgery for extensive bed sores. He had pain when he came into the hospital, but, because of his type of injury, such pain would not recur.''

We find from the evidence that his lost wages from the date of the accident to the date of his death at $78.00 per week total $5,616.00. His medical expense, as established by the evidence, was $1,787.30.

It is difficult to arrive at a sum of money for the physical disability, pain and suffering, etc., of deceased for the 72 weeks he lived after the injury. There can be no consideration of the fact that he would be permanently disabled, since death terminated all future damages.

We believe that the sum of $10,000.00, in addition to the lost wages and medical expense, is warranted by the evidence. Therefore, we recommend that the claim of Alberta Hansen, Administrator of the Estate of Edward A. Boegen, deceased, the original claimant, be allowed in the amount of $17,403.30.